IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| KATELYN HANKS, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>LA MICHOACANA MEAT MARKET, INC., )<br>and SRO INVESTMENTS, LTD., )<br>)<br>Defendants. ) | CIVIL ACTION<br><br>File No.: 3:18-cv-01572-L |

### CONSENT DECREE

This Consent Decree (this "Agreement") is made and entered into by and between **KATELYN HANKS** referred to in this Agreement as ("Plaintiff") and **LA MICHOACANA MEAT MARKET, INC. and SRO INVESTMENTS, LTD.** ("Defendants"). The signatories to this Agreement will be referred to jointly as the "Parties." This Agreement is made as a compromise between the Parties for the complete and final settlement of their claims, differences, and causes of action with respect to the dispute described below.

### Preamble

**WHEREAS**, on or about June 15, 2018, Plaintiff filed an action in the United States District Court for the Northern District of Texas, Dallas Division, entitled *Katelyn Hanks v. La Michoacana Meat Market, Inc. and SRO Investments, Ltd.*, Case No: 3:18-CV-01572 (the "Action"), wherein Plaintiff asserted claims for injunctive relief against Defendants based upon purported violations of Title III of the Americans with Disabilities Act, 42 U.S.C. 12181, *et seq*. ("ADA") and related claims for relief respecting the real property located at or about 800 West Jefferson Boulevard, Dallas, TX 75208, Dallas County Property Appraiser's account number 00000258848000000 as well as the adjacent parking lot, Dallas County Property Appraiser's account number 00000258847000000 (referred to as the "Facility");

**WHEREAS**, the Parties desire to compromise and fully and finally resolve and settle all actual and potential claims or litigation between them, to avoid the uncertainty, time and expense that would accompany such litigation;

WHEREAS, the Parties have agreed to enter into this Agreement pursuant to which each and every claim and/or cause of action asserted or that could have been asserted by Plaintiff against Defendants shall be fully, forever, and finally released;

NOW, THEREFORE, in consideration of the covenants and mutual promises and agreements contained herein, and other valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. **Attorney's Fees and Costs**

    1.1  Plaintiff and Defendants shall execute this Agreement and Plaintiff's counsel, Douglas S. Schapiro, Esq., Schapiro Law Group, P.L., 21301 Powerline Road, Suite 106, Boca Raton, FL 33433. Plaintiff's Counsel shall prepare a Joint Stipulation to Approve Consent Decree and Dismissal of Defendants with Prejudice to be distributed to all Parties for execution. Defendants agree to pay a total settlement amount of **$5,300.00** comprising of attorney's fees and costs of $5,000.00 and a reinspection fee of $300.00 to Plaintiff. All payments shall be made payable to "**Schapiro Law Group, P.L. Trust Account**," with an indication that the check is issued "in settlement of Case No. 4:18-CV-01572.

    1.2  Upon delivery to Plaintiff's Counsel of the fully executed Agreement and payment due with the executed Agreement referenced in 1.1 above Plaintiff shall promptly file the Joint Stipulation to Approve Consent Decree and Dismissal of Defendants with Prejudice, attaching a copy of the fully executed Agreement and proposed order of dismissal with prejudice.

    1.3  Plaintiff agrees to take any and all additional steps required to obtain dismissal of the Action as set forth above. Except as set forth herein, each Party shall be responsible for payment of his or its own litigation expenses, costs and attorneys' fees.

    1.4  Plaintiff and Plaintiff's Counsel acknowledge and agree that they are solely and entirely responsible for the payment and discharge of all federal, state, and local taxes, if any, that may, at any time, be found to be due upon or as a result of the Payment hereunder. Plaintiff and Plaintiff's Counsel, and each of them, expressly acknowledge that Defendants have not made any representations regarding the tax consequences of any Payment received pursuant to this Agreement.

    1.5  The Parties agree that a condition precedent for the validity of this Agreement is the Court's retaining jurisdiction to enforce the Agreement.

2. **Alterations or Modifications to the Facilities**

    2.1  The Parties hereto acknowledge and stipulate that Defendants shall modify or alter the items expressly identified by and in the manner specified in Exhibit "A." The repairs or modifications identified in Exhibit "A" shall be

completed in all respects no later than six (6) months from the effective date of the execution of this Agreement, which shall be the date indicated by the last signatory to the Agreement. The time period for Completion by Defendants shall be subject to acts of God, force majeure, or events beyond the control of Defendants, such as inability to obtain building or zoning permits, failure of the city/county or state inspectors to make inspections, city/county/state work on adjacent roadways/sidewalks which delay implementation of this Agreement, contractor defaults or work stoppages. In the event of such unforeseen circumstances, the time period for completion of the alterations or modifications in Exhibit "A" shall be extended by the number of days reasonably attributable to such delay-causing event as long as Defendants provide notice to Plaintiff's Counsel prior to the original completion date set forth above.

    2.2    Upon completion of the removal of the barriers and the alterations and modifications set forth in Exhibit "A", Defendants shall provide written notice by certified or registered mail or via e-mail to Plaintiff's Counsel.

    2.3    Right to Inspection: The Parties stipulate that after Plaintiff's Counsel receives notice of the completion of the alterations or modifications described in Exhibit "A" or after the elapse of the six (6) month time period set forth in Section 2.1 above, whichever is sooner, Plaintiff may inspect the Facility to ensure that Defendants have completed the repairs or modifications described in Exhibit "A." Defendants shall provide Plaintiff or their representative reasonable access to the Facility to verify completion of the work described in Exhibit "A."

    2.4    If an inspection contemplated herein reveals that any of the alterations or modifications described in Exhibit "A" have not been performed in a manner that does not materially comply with Exhibit "A," then Plaintiff shall have the right to enforce this Agreement pursuant to Section 3.1.

    2.5    It is agreed by all parties that if and upon all of the above modifications being completed as set forth in Exhibit "A," the Facility will be fully compliant with the ADA pursuant to the readily achievable standard.

3. **Enforcement Provisions**

    3.1    In the event the alterations and modifications described in Exhibit "A" are not completed in the manner and time frame set forth in this Agreement, Plaintiff shall be entitled to file an action to obtain specific performance against Defendants or otherwise enforce the requirements of this Agreement. In any action to enforce this Agreement, the parties agree Defendants' failure to timely modify the property pursuant to Section 2.1 above is a material breach of the Agreement.

4. **Compromise**

    4.1    The Parties agree and acknowledge that this Agreement is the result of a compromise and shall never be construed as an admission of any liability,

wrongdoing, or responsibility on the part of the Released Parties (as defined in Section 5.1 below). The Released Parties expressly deny any such liability, wrongdoing, or responsibility.

## 5. Mutual Release

5.1 In exchange for the good and valuable consideration set forth herein the sufficiency of which is hereby acknowledged, the Parties hereto mutually release each other, or through their corporate capacity, agents, employees, family members, partners, successors, assigns, and heirs, along with anyone claiming by or through them, jointly and severally (collectively the "Releasing Parties") hereby release, acquit, satisfy and discharge the other, and along with any and all of their predecessors, agents, employees, assigns, heirs, officers, directors, shareholders, members, affiliated entities, and any entity or person related to them, jointly and severally, (hereinafter the "Released Parties") from any and all claims, demands, liabilities, debts, judgments, damages, expenses, actions, causes of action or suits of any kind which the Releasing Parties may have, may have had, or may hereafter raise against the Released Parties, including but not limited to this subject litigation arising under Title III of the ADA including all claims by the Releasing Parties for attorneys' fees and costs, expert fees, litigation expenses, or any other amount, fee, and/or cost, with the exception of the attorneys' fees and costs required to be paid by the Defendants pursuant to paragraph 1 of this Agreement and any attorney's fees and costs incurred in the any future enforcement of this Agreement. This Release is strictly limited to the Facility.

5.2 As a material inducement for Defendants to enter into this Agreement, Plaintiff represents and warrants that he is not aware of any pending tort, contract, or other legal claims against Defendants, other than the specific claims brought in this Action under Title III of the ADA, which are released under this Agreement.

5.3 Plaintiff represents and warrants that no portion of any of the matters released by this Agreement and no portion of any recovery or settlement to which they might be entitled have been assigned or transferred to any other person, firm, or corporation not a Party to this Agreement, in any manner, including by way of subrogation or operation of law or otherwise.

## 6. Notice

6.1 Unless otherwise provided in this Agreement or by law, all notices or other communications required or permitted by this Agreement or by law to be served on or delivered to any Party to this Agreement shall be delivered as follows:

4

Defendants:

LA MICHOACANA MEAT MARKET, INC.
and SRO INVESTMENTS, LTD.
c/o Ruth M. Willars, Esq.
150 W. Parker Road, 3rd Fl.
Houston, TX 77076
Or
rwillars@montyramirezlaw.com


To Plaintiff:

Douglas S. Schapiro, Esq.
Schapiro Law Group, P.L.
21301 Powerline Road, Suite 106
Boca Raton, FL 33433
Or
Schapiro@schapirolawgroup.com


  6.2 A Party may change such address for the purpose of this paragraph by giving timely written notice of such change to all other Parties to this Agreement in the manner provided in this paragraph.

## 7.  Free Will

  7.1 The Parties acknowledge that each has had an opportunity to consult with counsel of their own choosing concerning the meaning, import, and legal significance of this Agreement, and that each has done so to the extent desired. In addition, the Parties acknowledge that they each have read this Agreement, as signified by their signatures hereto, and are voluntarily executing the same after having had the opportunity to seek the advice of counsel for the purposes and consideration herein expressed.

## 8.  Miscellaneous Terms and Conditions

  8.1 This Agreement contains the complete settlement agreement between the Parties. Any and all prior agreements, representations, negotiations, and understandings between the Parties, oral or written, express or implied, with respect to the subject matter hereof are hereby superseded and merged herein.

  8.2 This Agreement may be executed in counterparts or by copies transmitted by facsimile or email, all of which shall be given the same force and effect as the original.

8.3 This Agreement may be modified only by a written document signed by all of the Parties. No waiver of this Agreement or of any of the promises, obligations, terms, or conditions hereof shall be valid unless it is written and signed by the Party against whom the waiver is to be enforced.

8.4 This Agreement shall be binding upon the Parties hereto, their predecessors, successors, parents, subsidiaries, affiliates, assigns, agents, directors, attorneys, officers, families, heirs, spouses, and employees.

8.5 If any provision of this Agreement shall be finally determined to be invalid or unenforceable under applicable law by a court of competent jurisdiction, that part shall be ineffective to the extent of such invalidity or unenforceability only, without in any way affecting the remaining parts of said provision or the remaining provisions of this Agreement.

8.6 The Parties acknowledge that they have reviewed this Agreement in its entirety and have had a full opportunity to negotiate its terms, and therefore waive all applicable rules of construction that any provision of this Agreement should be construed against its drafter and agree that all provisions of the Agreement shall be construed as a whole, according to the fair meaning of the language used.

8.7 Plaintiff represents that, other than the Action, he has not filed or authorized the filing of any complaints, charges, or lawsuits against Defendants with any federal, state, or local court, governmental agency, or administrative agency relating to the subject Facilities, and that if, unbeknownst to Plaintiff, such a complaint, charge, or lawsuit has been filed on his behalf, he or it will use his or its best efforts to cause it immediately to be withdrawn and dismissed with prejudice.

8.8 The parties and their Counsel agree to execute any and all further documents and perform any and all further acts reasonably necessary or useful in carrying out the provisions and purposes of this Agreement.

8.9 In any action or other proceeding to enforce rights under this Agreement, the prevailing Party shall recover from the losing party all attorneys' fees, litigation expenses, and costs.

8.10 The Parties agree that any ambiguities in this Agreement shall not be construed against the drafter of the Agreement.

8.11 The Parties acknowledge that all Recitals and/or "WHEREAS" clauses preceding paragraph 1 are incorporated as a material part of this Agreement.

8.12 This Agreement is entered into in and shall be governed by and construed and interpreted in accordance with the substantive laws of the State of Texas.

IN WITNESS WHEREOF, the Parties have executed this agreement as of the date(s) set forth below:

Dated: _____, 2018        _____
                                   Katelyn Hanks

Dated: September 21, 2018          _____
                                   For: **LA MICHOACANA MEAT MARKET, INC.**

                                   Title: President

Dated: September 21, 2018          _____
                                   For: **SRO INVESTMENTS, LTD.**

                                   Title: Manager of general partner

## EXHIBIT A

**For purposes of this Agreement, "2010 ADAAG Standards" refers to the ADA Accessibility Guidelines 28 C.F.R. Pt. 36, App. A**

**Modifications to be made**

(i) One accessible route compliant with section 403 of the 2010 ADAAG Standards shall be provided within the Property from the public sidewalk or street to the accessible entrances of the Property in compliance with section 206.2 of the 2010 ADAAG Standards.
- If this access route crosses a vehicular way, a marked access route shall be placed onto the surface of the vehicular way and the distance of this marked accessible route should be the smallest possible technically feasible distance available.
- If the cost of providing an accessible route from the public sidewalk exceeds $4,000.00 or is not technically feasible, after providing Plaintiff's counsel with notice of such cost or infeasibility, it shall be declared not readily achievable to provide an access route leading from the public sidewalk to the accessible entrances of the Property.

(ii) All accessible parking spaces shall fully comply with section 502 of the 2010 ADAAG standards.

(iii) All accessible parking spaces with ramps in the access aisle or accessible parking space shall be modified in the following manner:
- Option 1: Remove the existing ramp and provide a curb-cut ramp compliant with section 405 or 406 of the 2010 ADAAG standards. The landing of the new ramp shall be aligned and on the shortest possible distance from the end of the access aisle of the accessible parking space.
- Option 2: Keep the existing ramp in place. If the existing ramp does not fully comply with section 405 or 406 of the 2010 ADAAG standards, modify the existing ramp so it is in full compliance with either section 405 or 406 of the 2010 ADAAG Standards. Restripe the accessible parking space and access aisle so the access aisle is adjacent to the ramp and the ramp does not protrude into the access aisle or accessible parking space. The new accessible parking space(s) shall fully comply with section 502 of the 2010 ADAAG Standards.

(iv) The total number of accessible parking spaces shall be modified in accordance with section 208.2 of the 2010 ADAAG Standards. At least one accessible parking space shall be a van accessible parking space in compliance with section 502.2 of the 2010 ADAAG Standards and be identified as a van accessible parking space in compliance with section 502.6 of the 2010 ADAAG standards.

**The following modifications are to be made to the interior of La Michoacana Meat Market:**

(i) At least 5% of the eating surfaces shall have eating surfaces where the minimum height of the eating surface is 28 inches above the finished floor and the maximum height of the eating surface of 34 inches above the finished floor in compliance with section 902 of the 2010 ADAAG standards.

(ii) It is agreed it is not readily achievable to modify the meat counter where goods and services are transacted to fully comply with section 904.4 of the 2010 ADAAG standards. No modifications to the meat counter are required.

(iii) Regarding the money order counter, as a readily achievable alternative, a sign shall be posted in a visible area on or about the counter where financial transactions occur stating, "Assistance Available" and containing the International Symbol of Accessibility. Moreover, a clipboard shall be made available to disabled patrons.

(iv) All self-serve dispensers shall have actionable mechanisms that have a maximum height of 48 inches above the finished floor.
- If the cost of doing so exceeds $1,500.00 or is not technically feasible, after providing Plaintiff with an estimate of the cost or evidence of not being technically feasible, it is agreed it is not readily achievable for self-serve dispensers to have actionable mechanisms that have a maximum height of 48 inches above the finished floor.
- As a readily achievable alternative, any self-serve dispenser that is able to comply with the cost and feasibility limitations above, shall be modified to provide actionable mechanisms with a 48-inch maximum height. Those dispensers that are not able to be modified within the cost and feasibility constraints above shall not be required to be modified. Instead, a sign shall be posted adjacent to said dispenser stating, "Assistance Available" and containing the International Symbol of Accessibility. Moreover, a policy shall be enforced by the operator of the store assisting the disabled patron upon request.

(v) The actionable mechanism of the credit card input device at the money order counter shall have a maximum height of 48 inches above the finished floor.

(vi) It is agreed it is not readily achievable to maintain a minimum 36-inch-wide access route to all publicly accessible areas of the store. As a readily achievable alternative, it shall be permitted to have the clear width of the accessible route inside the store decrease to a minimum width of 32 inches for a maximum distance of 24 inches. Otherwise, a policy of maintaining an accessible route with a minimum clear width of 36 inches to all publicly accessible areas of the store shall be enforced.

**LA MICHOACANA MEAT MARKET RESTROOMS**

(i) The door to the toilet stall shall be self-closing in compliance with section 604.8.1.2 of the 2010 ADAAG Standards.

9

(ii) The door hardware to the restroom doors shall be modified, so the door hardware complies with section 309.4 of the 2010 ADAAG standards.
(iii) The maneuvering clearance of the door to the restroom stall shall comply with section 404.2.4.1 of the 2010 ADAAG standards.
(iv) The height of the paper towel dispenser or other hand drying device shall be modified, so its actionable mechanism has a maximum height of 48 inches above the finished floor.

IN WITNESS WHEREOF, the Parties have executed this agreement as of the date(s) set forth below:

Dated: 10/10th, 2018     _____
                          Katelyn Hanks

Dated: September 21, 2018     _____
                               For: **LA MICHOACANA MEAT MARKET, INC.**

                               Title: President

Dated: September 21, 2018     _____
                               For: **SRO INVESTMENTS, LTD.**

                               Title: Manager of general partner

7